THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRANK WOLF, Appellant.

County Court, Nassau County, October 17, 1934.

*James L. Martin,* for the appellant.

*Richard H. Brown, Assistant District Attorney,* for the respondent.

JOHNSON, J.   The defendant has appealed from a judgment of conviction rendered against him in the Police Court of the village of Sea Cliff upon an information charging him with violation of an ordinance of that village in failing to obey the instructions of a traffic sign and light, located at the intersection of Sea Cliff and Roslyn avenues in that village.

It appears from the return on appeal that the village erected and maintained at the intersection of Sea Cliff and Roslyn avenues a traffic light suspended at the usual height for traffic lights, which showed a red light on all four sides at rapid intervals; that on each of the four sides and immediately below the light were hung signs with the statement, " Full Stop Then Go."   It further appears from the return that Sea Cliff avenue is a county road, that Roslyn avenue is a village street, that Sea Cliff village is not a first class village and that no stop signs were erected at the intersection in question other than those stated.

The defendant seeks a reversal as a matter of law on several grounds.   Among other things, he asserts that the legislative body of the village was without power to enact an ordinance under the Vehicle and Traffic Law, section 90, subdivision 2, because it is not a village of the first class.   The restriction in that statute to which

he refers is the portion of subdivision 2 prohibiting any village, other than a village of the first class, from enacting an ordinance pursuant to that subdivision, which shall require a vehicle proceeding along a State or county highway to stop except at the intersection of another State or county highway.

No county or State highway is here involved. Concededly, Roslyn avenue is a village street and as such is under the exclusive control and supervision of the village authorities. (Village Law, § 141.) Other highways are classified by Highway Law, section 3. State highways are therein defined as those constructed or improved under the Highway Law at the sole expense of the State, including those specifically designated in Highway Law, section 120. County highways are therein defined as those constructed or improved at the joint expense of the State and county, or of the State, county and town. County highways were subsequently designated by name and description in Highway Law, section 122, as amended, subdivision 29 of which designated county highways in Nassau county. By chapter 763 of the Laws of 1933 section 3 of the Highway Law, classifying highways, was amended so as to eliminate county highways and to include them in the classification of State highways. At the same time and by the same act, Highway Law, section 122, was amended accordingly. The result is that since May 5, 1933, there have been no county highways but only State highways, county roads, town highways and village streets. Sea Cliff avenue is not and never was either a county highway or a State highway. It is and always has been a county road. County roads are defined in Highway Law, section 3, as roads constructed under Highway Law, section 320-b, and roads constructed or improved under a general or special law, which are maintained by the county. County roads in Nassau county are and always have been constructed and maintained by the county under a special act. The first of such statutes was chapter 333 of the Laws of 1893, applicable to former Queens county when Nassau county was a part thereof, which was re-enacted as chapter 564 of the Laws of 1910, which statute, as subsequently amended, governs as to county roads in Nassau county. By that act such county roads are exclusively under the control and jurisdiction of the board of supervisors and free from the jurisdiction and control of the town and village authorities, with certain exceptions. One of such exceptions is found in the amendment to that act added by chapter 384 of the Laws of 1926, which specifically provides that village trustees have jurisdiction within their villages to police county roads, adopt traffic ordinances, etc., with reference thereto and indeed conferring upon such village authorities the same powers

as to county roads within their limits as such authorities exercise over village streets. The result is that so far as traffic ordinances are concerned, the authorities of the village of Sea Cliff have the same power and jurisdiction over Sea Cliff avenue that they have over Roslyn avenue, which is a village street. It is necessary, therefore, to consider of what that jurisdiction consists. The board of trustees of the village is empowered to regulate the use of streets by pedestrians, animals, motor vehicles and other vehicles, subject to the general laws of the State; is authorized to do all acts and enact any ordinances not inconsistent with existing law, which may be deemed expedient or desirable for the good government of the village, etc., and to enact ordinances not inconsistent with existing law for the same general purposes. (Village Law, § 89, subds. 44, 59; § 90.) It would appear, therefore, that under this statute the board of trustees of a village such as Sea Cliff has power to enact any traffic ordinance which is not inconsistent with the general law. A similar provision is to be found in present section 90 of the Vehicle and Traffic Law, providing that such local authorities may not enact or enforce any ordinance, etc., inconsistent with the provisions of that law.

Vehicle and Traffic Law, section 2, subdivision 25, defines official traffic signs and signals as including all signs, markings, devices and signals not inconsistent with that act, placed or erected by authority of a public body having jurisdiction, for the purpose of guiding, directing, warning or regulating traffic. Vehicle and Traffic Law, section 88, subdivision 6, provides that no person shall fail, neglect or refuse to comply with any lawful traffic regulations displayed in any highway. It seems to me to follow from those statutory provisions that the board of trustees of the village of Sea Cliff were empowered to provide the traffic signal in question and that an ordinance enacted by that village requiring obedience to such a traffic signal would be an ordinance consistent with the general provision of law found in the Vehicle and Traffic Law. This conclusion is borne out by the opinions on the subject rendered by the Attorney-General. (See Opinions of Attorney-General, 1930, p. 320; 1931, p. 364.)

It remains to be determined, however, whether the traffic signal in question, and its erection by the village, is in compliance with the restrictive provisions of Vehicle and Traffic Law, section 90, subdivision 2. These provisions obviously must be read and construed in connection with the powers conferred upon villages to enact ordinances regulating traffic under the statute above referred to. In subdivision 2 provision is made for the enacting of ordinances requiring traffic to come to a " Full Stop," unless otherwise directed

by a peace officer or by a signal. In the instant case the village has provided a traffic signal requiring all traffic to come to a full stop. As pointed out by the Attorney-General, there is a distinction between " Full Stop " signs and the usual " Stop and Go " signs. Bearing in mind that distinction, the provisions in subdivision 2 of section 90, *supra*, have an important bearing. Here we have a blinking red light beneath which is a stop sign. The subdivision referred to requires, in my opinion, that where a full stop is required, the stop signs shall be erected and maintained at or near the curb, and shall be of the size and visibility therein required. It does not appear in the instant case that there was compliance with that provision. For that reason, therefore, the judgment appealed from must be reversed on the law.